**\*NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

CHRISTOPHER CARLONE,     :
                        :

     Plaintiff,        :

                        :

v.                     :         Civil Action No. 08-3453(FLW)

                        :

MICHAEL J. ASTRUE,       :

in his official capacity as the    :          **OPINION**

Commissioner of Social Security,  :

                        :

     Defendant.       :

_____:

**WOLFSON, United States District Judge**:

      Plaintiff Christopher Carlone ("Plaintiff") appeals from the final decision of the Commissioner of Social Security ("the Commissioner"), Michael J. Astrue, denying Plaintiff disability benefits under the Social Security Act ("Act").  The Court has jurisdiction to hear this matter pursuant to 42 U.S.C. § 405(g).  The general issue before this Court is whether Plaintiff is entitled to disability insurance benefits under sections 216(i) and 223 of the Act.  The specific issue is whether the Administrative Law Judge's ("ALJ") determination, at Step Five of the sequential process, which found that Plaintiff has the functional capacity to perform substantial gainful activity, is supported by substantial evidence.  After reviewing the administrative record, this Court finds that the ALJ's decision is not based on the substantial evidentiary support required by 42 U.S.C. §

405(g).[1]  Therefore, this case shall be REMANDED for further consideration by the Commissioner, consistent with this Opinion.

## I.      Procedural History

Plaintiff, age twenty-eight (28) at the time of this proceeding, applied for Child's Insurance Benefits on May 17, 2005, and Social Security Disability Benefits on November 20, 2006. Administrative Record ("AR") 44-49.  Plaintiff's claims under both applications were denied. Thereafter, on September 28, 2007, a hearing was held before an ALJ.  The ALJ affirmed the decision of the Commissioner, and found that Plaintiff was not disabled within the purview of the Act.  Plaintiff then timely requested review by the Appeals Council; this request, however, was denied on June 13, 2008.  Plaintiff now brings an appeal from the final decision of the Commissioner to this Court.  For benefits purposes, the period of disability at issue here is between May 17, 2005 (date upon which Plaintiff applied for Child's Insurance Benefits) and September 28, 2007 (date upon which Plaintiff's hearing was held).

## II.     Statement of Facts

### A.  Review of Medical Evidence

Plaintiff alleges that he became unable to work on November 17, 2004, due to degenerative disc disease, inflammatory arthritis, osteoarthritis in both knees, patellofemoral arthrosis, central serous retinopathy, cervical disc bulge, social anxiety, depression, irritable bowel syndrome,

---

[1] Plaintiff filed a subsequent application for benefits and was granted disability benefits as of October 1, 2007--two days after the denial of benefits by the Administrative Law Judge in the present matter.  Benefits were granted based upon Plaintiff's "four thoracic disc herniations, two lumbar disc herniations, osteoarthritis of both knees, and other impairments."  See Plaintiff's Reply at 4.

fibromyalgia, and Ehlers-Danlos syndrome.[1]  AR at 303, 311-312.  The majority of Plaintiff's conditions are attributed to a genetic pre-disposition to an "osteoarthritis-like condition" that causes intense swelling of all joint areas, particularly of the knees and ankles.  Id.

Plaintiff has undergone extensive medical examinations and procedures during the period of his claimed disability.  Starting at the age of twelve (12) through the time this application was filed, Plaintiff has been examined by a host of medical doctors:  pediatricians, rheumatologists, neurologists, orthopedic surgeons, and pain specialists.  Medical records stemming from August 11, 1996 to September 11, 2003, illustrate the various forms of treatment Plaintiff has received to alleviate knee pain, swelling, and any difficulties with walking.  The Record also show that during that period, Plaintiff was diagnosed with various forms of degenerative ailments.  For example, Dr. W. Thomas Gutkowski diagnosed Plaintiff with patello-femoral arthrosis, potential osteoarthritis, and generalized synovitis.  The x-rays revealed Plaintiff's tri-compartmented arthritis and a "patellar loose body."  Id.  As a result of this diagnosis, Plaintiff, on November 2, 2001, underwent arthroscopic surgery on his left knee.  Post-procedure, Dr. Gutkowski further discovered a large area of "chondral wear and exposed bone."  Over time, the left knee has worsened with a "loss of global motion, small effusions, and significant grind in the patello-femoral joint."  AR at 94.  The final recommendation by Dr. Gutkowski was that Plaintiff should seek treatment from a rheumatologist

---

[1] "Ehlers-Danlos syndrome (EDS) is a heterogeneous group of heritable connective tissue disorders, characterized by articular (joint) hypermobility, skin extensibility and tissue fragility. There are six major types of EDS. The different types of EDS are classified according to their manifestations of signs and symptoms. Each type of EDS is a distinct disorder that "runs true" in a family. This means that an individual with Vascular Type EDS will not have a child with Classical Type EDS." http://www.ednf.org/index.php?option=com_content&task=view&id=1347&Itemid=88888968 (last visited on Sept. 22, 2009).

3

in the form of hyaluronic acid injections and chronic anti-inflammatory medication.  AR at 94-101 and 214-16.  The post-operative medical report, issued by the Medical Center at Princeton, confirmed Dr. Gutkowski's findings:  moderate synovitis in the supra patellar pouch with several large osteo-chondral loose bodies; advanced patello-femoral arthrosis with large areas of exposed bone; marked chondral degenerations on the entire femoral trochlear grove and patella, and to a lesser degree on the tibia.  AR at 102-3, 119-20.

After further examination, Dr. Gutkowski opined that Plaintiff's intense level of arthritis was unusual for a person of young age; the condition being attributed to a possible genetic process.  In fact, genetic testing, conducted by Dr. Pappas of the Human Genetics Program and New York University Medical Center confirmed this conclusion, and consequently diagnosed Plaintiff with Ehlers Danlos syndrome.

Additional findings indicate a loss of signal in certain discs comprising Plaintiff's cervical spine.  X-rays demonstrate a mild disc bulge, with possible small annual tear at the C6-7 level, and degenerative changes in the thoracic spine.  Other images of the spine show signs of herniated areas. AR at 217-222.

Plaintiff also suffers from anxiety and intense headaches.  Specific treatment(s) for these conditions include various medications, particularly Zoloft, Buspar, and Prozac.  AR at 141. Additionally, Plaintiff also experiences severe depression and insomnia; medications to alleviate these conditions include Pamelor, Effexor, Xanax, and Lexapro.  Id. at 159-216.

The Social Security Administration's consultative expert, Dr. Gupta, diagnosed Plaintiff with generalized anxiety disorder, social anxiety, panic attacks (with agoraphobia), and moderate psychological and financial stressor--with a global assessment score of "55."  Id. at 257-261.

4

**B.  Review of Non-Medical Evidence**

Plaintiff, at the time of the hearing, was twenty-eight (28) years of age.  Plaintiff worked for Rutgers, The State University of New Jersey ("Rutgers"), as an employee in the maintenance department.  AR at 314.  This position required a substantial amount of heavy lifting, as well as walking and climbing staircases.  His main duties included collecting garbage from the various on-campus dormitories, placing those articles into a truck, and eventually carting it to Rutgers's dumpsters.  Plaintiff was also required to move various dormitory articles--from refrigerators to bedroom furniture--and fix any broken items in those rooms.  AR at 321.  Plaintiff eventually left this position with Rutgers due to intense joint pain.  Id.  Prior to leaving, Plaintiff attempted to change positions, however, was unable to do so; in addition to fatigue, the physical strain of this position added stress to his back and lower joints.

Prior to his position with Rutgers, Plaintiff was employed by a camera company, as an employee in their warehouse.[1]  This position also had adverse physical effects on Plaintiff; various hours of standing on concrete flooring affected his lower back, further adding to his standard level of pain.  Plaintiff then attempted clerical work for the company, in the form of computerized data entry; this too resulted in back pain, described as "a hot poker . . . into my back, . . . muscles being pulled apart,  . . . it was a very intense feeling.  That was probably the worst feeling that I've had."  Id. at 315.

Plaintiff claims that he cannot perform light work, as any form of exertion will quickly cause his knees to swell and eventually "give out on him."  Id. at 317.  Plaintiff also does not operate an

---

[1] The Administrative Record does not indicate whether Plaintiff ever specified the name of the camera company which employed him.

5

automobile; he is generally transported by his father.  Additionally, Plaintiff does not engage in sports, and finds great difficulty in performing household chores.  Plaintiff additionally testified that he is relegated to watching television on his back to avoid adding any stress to his lower cervical region.  Id. at 324.

### C.  The ALJ's Findings

Based on the medical evidence included within the Administrative Record, the ALJ--before whom Plaintiff and his counsel appeared--held that Plaintiff retained the residual functional capacity to perform light work.  AR  20.  Finding Plaintiff's functional capacity was inconsistent with his past relevant medium work, the ALJ determined that Plaintiff could not perform the same, and proceeded to the Fifth Step of the sequential evaluation.  AR. 25.  Based on Plaintiff's categorization of "light" residual functional capacity, young age, educational background, and vocational history, the ALJ deemed that Plaintiff could perform a multitude of jobs that existed in significant numbers in the national economy.  By using the Medical Vocational Guidelines contained at 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 202.20, the ALJ concluded that at the time of the hearing Plaintiff was not disabled.  Id.

### IV.    Discussion

### A.  Standard of Review

On a review of a final decision of the Commissioner of the Social Security Administration, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security,

with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); see Matthews v. Apfel, 239 F.3d 589, 592 (3d Cir. 2001).  The Commissioner's decisions regarding questions of fact are deemed conclusive on a reviewing court if supported by "substantial evidence in the record."  42 U.S.C. § 405(g); see Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000).  While the court must examine the record in its entirety for purposes of determining whether the Commissioner's findings have support by such evidence, Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978), the standard is "highly deferential."  Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004).   Indeed, "substantial evidence" is defined as "more than a mere scintilla," but less than a preponderance.  McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004).  "It means such relevant evidence as a reasonable mind might accept as adequate."  Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999). A reviewing court is not "empowered to weigh the evidence or substitute its conclusions for that of the fact-finder."  Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992).  Accordingly, even if there is contrary evidence in the record that would justify the opposite conclusion, the Commissioner's decision will be upheld if it is supported by the evidence.  See Simmonds v. Heckler, 807 F.2d 54, 58 (3d Cir. 1986).

Whether or not the findings of the ALJ are based on substantial evidence of the record is the main issue for this Court's review.

**B.  Standard for Entitlement of Benefits**

Disability insurance benefits may not be paid under the Act unless Plaintiff first meets the statutory insured status requirements.  See 42 U.S.C. § 423(c).  Plaintiff must also demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can

7

be expected to last for a continuous period of not less than twelve months."   42 U.S.C. § 423(d)(1)(A); see Plummer, 186 F.3d at 427.  An individual is not disabled unless "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 US.C. § 423(d)(2)(A).

The Act establishes a five-step sequential process for evaluation by the ALJ to determine whether an individual is disabled.  See 20 C.F.R. § 404.1520.  First, the ALJ determines whether the claimant has shown that he is not currently engaged in "substantial gainful activity."  20 C.F.R. § 404.1520(a); see Bowen v. Yuckert, 482 U.S. 137, 146-47 n.5 (1987).  If a claimant is presently engaged in any form of substantial gainful activity, he/she is automatically denied disability benefits. See 20 C.F.R. § 404.1520(b); see also Bowen, 482 U.S. at 140.  Second, the ALJ determines whether the claimant has demonstrated a "severe impairment" or "combination of impairments" that significantly limits his physical or mental ability to do basic work activities.   20 C.F.R. § 404.1520(c); see Bowen, 482 U.S. at 146-7 n.5.  Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b). These activities include physical functions such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling."  Id.  A claimant who does not have a severe impairment is not considered disabled.  20 C.F.R. § 404.1520(c); see Plummer, 186 F.3d at 428.  Third, if the impairment is found to be severe, the ALJ then determines whether the impairment meets or is equal to the impairments listed in 20 C.F.R. Pt. 404, Subpt. P., App. 1 (the "Impairment List").  20 C.F.R. § 404.1520(a)(4)(iii).  If the claimant demonstrates that his/her impairments are equal in severity to, or meet those on the Impairment List, the claimant has satisfied his/her burden of proof and is automatically entitled to

8

benefits.  See 20 C.F.R. § 404.1520(d); see also Bowen, 482 U.S. at 146-47 n.5.  If the specific impairment is not listed, the ALJ will consider in his/her decision the impairment that most closely satisfies those listed for purposes of deciding whether the impairment is medically equivalent.  See 20 C.F.R. § 404.1526(a).  If there is more than one impairment, the ALJ then must consider whether the combination of impairments is equal to any listed impairment.  Id.  An impairment or combination of impairments is basically equivalent to a listed impairment if there are medical findings equal in severity to all the criteria for the one most similar.  Williams, 970 F.2d at 1186.

If the claimant is not conclusively disabled under the criteria set forth in the Impairment List, step three is not satisfied, and the claimant must prove at step four whether he/she retains the residual functional capacity to perform his/her past relevant work ("PRW").  20 C.F.R. § 404.1520(d); Bowen, 482 U.S. at 141.  If the claimant is able to perform her previous work, the claimant is determined to not be disabled.  20 C.F.R. §§ 404.1520(e), 416.920(e); Bowen, 482 U.S. at 141-42. The claimant bears the burden of demonstrating an inability to return to the past relevant work. Plummer, 186 F.3d at 428.  Finally, if it is determined that the claimant is no longer able to perform his/her previous work, the burden of production then shifts to the Commissioner to show, at step five, that the "claimant is able to perform work available in the national economy." Bowen, 482 U.S. at 146-47 n.5; Plummer, 186 F.3d at 428.  This step requires the ALJ to consider the claimant's residual functional capacity, age, education, and past work experience.  20 C.F.R. § 404.1520(f). The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether the claimant is capable of performing work and not disabled.  Id.

As the Administrative Record indicates, and both Plaintiff and Defendant concede in their respective briefs, Plaintiff met his burden of proof at Steps One through Four of the sequential

process.  Specifically, Plaintiff was not engaged in any form of substantial gainful activity (Step One); Plaintiff's medical records demonstrate a combination of medical ailments that significantly preclude him from engaging in basic work functions (Step Two); Plaintiff's severity of impairments met those listed on the Impairment List as described by the Act (Step Three), and Plaintiff did not retain the functional capacity to return to his any of his prior employments (Step Four).  By meeting the requirements of Steps One through Four, the ALJ made a determination at Step Five that the Plaintiff retained functional capacity to perform a series of positions available in the national economy.  It is at this Fifth Step, however, where Plaintiff disputes the ALJ's decision.

### C.  Plaintiff's Argument on Appeal

On this appeal, Plaintiff argues that the ALJ improperly assessed Plaintiff's subjective complaints of pain and the severity of Plaintiff's mental impairment.  Additionally, Plaintiff argues that the ALJ failed to seek the opinion of a vocational expert.  To support the first two claims, Plaintiff relies on the medical reports of additional physicians, which are included among the documents comprising the Administrative Record.  Plaintiff argues that the ALJ allegedly did not consider these reports in making his decision.  For the claim regarding the failure to use a vocational expert, Plaintiff submits that the use of a vocational expert is necessary for determining whether other work in which the Plaintiff could engage is presently available in the national economy.  Below, the Court will address each of the Plaintiff's contentions.

### 1.  Assessment of the Plaintiff's Complaints of Pain

The Third Circuit has held that subjective complaints of pain may constitute a disability when they are accompanied by medical signs and laboratory findings.  See Green v. Schweiker, 749 F.2d 1066, 1070 (3d Cir. 1984); see also, Slovak v. Barnhart, No. 02-1361, 2003 U.S. Dist. LEXIS 26561, at *21 (E.D. Pa. Sep. 22, 2003).  Even if subjective complaints of pain are not completely buttressed by medical evidence, an ALJ must accord them serious consideration.  See Welch v. Heckler, 808 F.2d 264, 270 (3d Cir. 1986).  When there exists conflict between the pain alleged by Plaintiff and the objective medical evidence in the record, it is the duty of the ALJ to resolve such conflict.  Furthermore, if the ALJ finds Plaintiff's description of pain is not credible, the ALJ must make a negative credibility determination regarding the degree of subjective pain alleged.  Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983).  When reviewing a decision by an ALJ, the district court must defer to the ALJ's determinations on the credibility of the witnesses and on whether the claimant has satisfied the burden of proof.  See Davis v. California, 439 F. Supp 94, 98 (E.D. Pa. 1977).  "Great deference is given [to the ALJ's] judgment as fact-finder, since he actually heard the witness' testimony and observed their demeanor.  Most particularly, the [ALJ] to whom the Secretary delegated fact finding responsibilities, must decide issues of credibility and appropriate weight to be given the exhibits."  Id.

In the present case, Plaintiff argues that the ALJ erroneously found Plaintiff's description of his pain is not credible, and consequently did not deem it as a disabling factor.  The ALJ's decision, however, does little to explain the reasons why he discredited Plaintiff's testimony in light of plaintiff's medical history.  While the ALJ did make note of the medical records and the array of medications that Plaintiff is presently prescribed to alleviate pain, this information did not change the ALJ's determination as to Plaintiff's testimony of subjective pain.

Indeed, Plaintiff's pain is supported by examinations that were performed by various medical practitioners--whose reports comprise a portion of the Administrative Record.  As the Third Circuit has held, when medical records support the existence of pain, described by the Act as non-exertional limitations, the ALJ must offer them serious consideration.  See Welch v. Heckler, 808 F.2d 264, 270 (3d Cir. 1986).  Here, the ALJ appears to have overlooked those medical reports.

Rather than review the medical findings in their entirety, many of which confirmed findings of pain (specifically those of Dr. Yager, Dr. Rihacek, and Dr. Metzger--on which the ALJ relies), the ALJ focused on specific descriptions from these reports concerning Plaintiff's activities--his continued practice of yoga,[1] bicycling, and daily walking.   AR at 24.  The ALJ, however, did not consider the fact (confirmed in the record) that Plaintiff has ceased these activities due to intense pain limitations.  Id. at 145-46.  Importantly, the medical report submitted by Dr. Marco Pappagallo, for example, details (along with the diagnosis of Ehlers-Danlos syndrome) that plaintiff suffers pain at a level of nine out of ten.  AR at 291-305.  This pain is caused from everyday activity, such as sitting, standing, walking, exercising, and heat.  Id.

Thus, the ALJ did not fairly distill the record and consequently, did not afford the medical evidence serious weight. While the district court generally defers to any findings made by the ALJ concerning Plaintiff's credibility, this Court finds that such deference is inappropriate at this time since the ALJ did not give sufficient weight to the evidence.  Additionally, the ALJ failed to explain why he discounted Plaintiff's testimony in light of numerous reports to the contrary.

**2. ALJ's Failure to Seek the Opinion of a Vocational Expert**

---

[1] Yoga can arguably be considered an alternative form of pain relief therapy.

At Step Five of sequential analysis, Plaintiff maintains that the findings of the ALJ--that the Plaintiff had the functional capacity to perform light work--was improper, particularly in light of the ALJ's failure to seek the opinion of a vocational expert.

During Step Five, once a claimant satisfies his or her initial burden of proof by showing that he/she is unable to return to their prior work due to exertional limitations, the burden shifts to the Commissioner to prove that there is some other substantial gainful employment that Plaintiff is able to perform.  Kangas v. Bowen, 823 F.2d 774, 777 (3d Cir. 1987).  A vocational expert ("VE") may provide reliable evidence regarding the existence of jobs in the national economy and whether the particular individual may be able to perform any of those positions, provided his/her functional limitations.  20 C.F.R. § 404.1566.  The testimony of a VE may constitute substantial evidence to support the ALJ's determination that there were a significant number of jobs in the national economy that Plaintiff could perform.  Rutherford v. Barnhard, 399 F.3d 546, 558 (3d Cir. 2005).

If relying on the testimony of a VE, the ALJ is required to ask the expert whether any possible conflict exists between his/her testimony and the DOT, and that if the testimony does not appear to conflict with the DOT, the judge must elicit a reasonable explanation for the apparent conflict.  Burns v. Barnhart, 312 F.3d 113, 127 (3d Cir. 2002) (citing SSR 00-4p).

When a claimant suffers from only exertional impairments, the Secretary's burden of showing that Plaintiff is capable of performing jobs in the national economy may be met through reliance upon the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 (the "GRIDS").  Where additional non-exertional[1] impairments exist (pain or lack of fine motor

---

[1] The regulations define "non-exertional limitations" as follows:

When the impairment and restriction imposed by your impairment(s) and related

13

capacity), however, the GRIDS may not be mechanically applied.  Green v. Schweiker, 749 F.2d. 1066, 1071-72 (3d Cir. 1984).   Instead, the Commissioner must rely upon some other supporting evidence in the record, such as testimony from a vocational expert, to demonstrate that the claimant can perform work available in the national economy.  Washington v. Heckler, 756 F.2d 959, 967 (3d Cir. 1985).

In the present case, since the ALJ discredited Plaintiff's complaints of pain, the ALJ never relied on the determination or opinions of a VE.  Rather, the ALJ applied the GRIDS and found that Plaintiff could not return to his prior work and that Plaintiff could perform a full range of light work. However, the ALJ appears to have improperly discredited Plaintiff's complaints of pain.  In that connection, because upon remand Plaintiff's pain may be found to be a non-exertional limitation, the ALJ may need the assistance of a VE.  In making such a determination, the AJL must differentiate between the exertional and non-exertional limitations and provide reasoning for such classification; an unsupported classification of the particular impairment is not sufficient to meet the definitions of the Act. See Maddaloni v. Commissioner of Social Security, 2009 U.S. App. LEXIS 18262, at *7 (D.N.J. July 25, 2009); see 20 C.F.R. § 404.1569 (a)(c).

---

symptoms, such as pain, affect only your ability to meet the demands of jobs other than the strength demands, we consider that you have only nonexertional limitations or restrictions.  Some examples of nonexertional limitations or restrictions include the following:  (i) you have difficulty functioning because you are nervous, anxious, or depressed; (ii) you have difficulty maintaining attention or concentration; (iii) you have difficulty understanding or remembering detailed instructions; (iv) you have difficulty in seeing or hearing; (v) you have difficulty tolerating some physical feature(s) of certain work settings, e.g., you cannot tolerate dust or fumes, or (vi) you have difficulty performing the manipulative or postural functions of some work such as reaching, handling, stooping, climbing, crawling, or crouching . . .  20 C.F.R. § 404.1569 (a)(c).

14

**IV.    Conclusion**

For the reasons set forth above, the Court finds that the ALJ's decision was not supported by substantial evidence in the record.  Accordingly, this case is remanded to the ALJ for further administrative review consistent with this opinion.

An appropriate Order shall follow.


/s/   Freda L. Wolfson
The Honorable Freda L. Wolfson
United States District Judge

DATED:  September 29, 2009

15